## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOHN and JANE DOE,** | § | |
| **AS NEXT FRIEND OF** | § | |
| **SARAH DOE, minor** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 5:11-CV-00412** |
| **NORTHSIDE INDEPENDENT** | § | |
| **SCHOOL DISTRICT, NORA** | § | |
| **MARTINEZ and VICE PRINCIPAL,** | § | |
| **DAVID ASLIN** | § | |
| | § | |
| *Defendants*. | § | **JURY DEMAND** |

### NORTHSIDE INDEPENDENT SCHOOL DISTRICT AND DAVID ASLIN'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR PARTIAL DISMISSAL

NOW COME Defendants[1] Northside Independent School District ("NISD" or "District"), and Vice Principal David Aslin, and files this, their Motion for Summary Judgment and Motion for Partial Dismissal and would respectfully show the Court the following:

### I.
### PROCEDURAL HISTORY

1.      This civil action was commenced on May 24, 2011, by Plaintiffs on behalf of their daughter, Sarah Doe.  Plaintiffs allege that in November and December of 2010, former NISD teacher Nora Martinez engaged in an inappropriate relationship with Sarah Doe.  This action asserts claims under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972, 20

---

[1] This response is filed on behalf of Defendant Northside Independent School District and Defendant David Aslin. Defendant Nora Martinez is not represented by the undersigned counsel.

U.S.C. § 1681 *et seq.,* and various state law claims against the District and Vice Principal David

Aslin.  *See* Dkt. No. 1 (Plaintiffs' Original Complaint).

## II.
## SUMMARY JUDGMENT STANDARD

2.      The summary judgment standard is well known by this Court.  FED. R. CIV. P. 56; *Celotex*

*Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

## III.
## SUMMARY JUDGMENT EVIDENCE

3.      Defendants incorporate by reference for all purposes the items attached hereto and made

part of this Motion in Appendix:   Defendants' Evidentiary Summary of Material Facts, as

required by Local Rule CV-7.

## IV.
## STATEMENT OF FACTS

4.      As set out in Defendants' Appendix, on or about January 23, 2011, it was discovered that

former NISD math teacher Nora Martinez and eighth grader, Sarah Doe, had engaged in an

inappropriate relationship including kissing and fondling, beginning around early December,

2010.  *See* Appendix at ¶¶ 3, 17, 18.

5.      Plaintiff John Doe discovered the inappropriate relationship as he held Sarah Doe's cell

phone during a volleyball game and discovered sexual texts between Ms. Martinez and Sarah

Doe.  *See* Appendix at ¶ 1.  Sarah Doe admitted that the texts were from Martinez.  *Id.*

6.      The following day, John Doe, Jane Doe and Sarah Doe went to the campus to notify the

school about Ms. Martinez.  *See* Appendix at ¶ 4.  The Doe's met with Vice Principal Aslin,

Officer Ramirez and a school counselor and explained what they had discovered. *See* Appendix at ¶ 4.

7.       Vice Principal Aslin immediately notified the Principal, Human Resources and Child Protective Services. *Id.* Later that day, Ms. Martinez admitted to engaging in an inappropriate relationship with Sarah Doe, resigned, and was arrested. *Id.*

8.       Vice Principal Aslin had previously warned Ms. Martinez about being too friendly with students and acting more professionally with students in general. *See* Appendix at ¶¶ 20-23. Specifically, Mr. Aslin had counseled Ms. Martinez about not allowing students in her classroom during her conference period and not to allow students behind her desk. See Appendix at ¶¶ 20-21.

9.       On or about December 2, 2010, Mr. Aslin decided to observe surveillance video of Ms. Martinez for possible boundary issues after Donna Rogers (math teacher and math department coordinator), informed him that Sarah Doe and other students were going to Ms. Martinez' room for tutoring before and after school. *See* Appendix at ¶ 22. Ms. Rogers was concerned because she felt that students were going in the classroom to visit rather than for tutoring and she heard laughing whenever she walked by. *Id.* After reviewing the video, on or about December 6, 2010, Mr. Aslin met with Ms. Martinez regarding his feeling that she needed to maintain professional boundaries between students and teachers. *Id.* One video clip showed Ms. Martinez and Sarah Doe engage in a brief hug in the hallway, and another showed Sarah Doe "hip-bump" (purposefully side bumping one's hip to another's hip) Ms. Martinez as they walked down the hall. *See* Appendix at ¶¶ 22, 23. Mr. Aslin directed Ms. Martinez to cease that behavior immediately and act professionally. *Id.* Ms. Martinez agreed to change her behavior.

*See* Appendix at ¶ 23.  Mr. Aslin did not at any time suspect that Nora Martinez was sexually abusing or engaging in any sexual behavior with Sarah Doe, or that their relationship was headed toward sexual abuse.  *See* Appendix at ¶ 24.

10.     Academic Dean, Jaime Liendo, had also previously warned Ms. Martinez regarding not allowing students behind her desk to avoid any potential Family Educational Rights and Privacy Act ("FERPA") violations, such as students observing others' grades.   However, he never suspected any relationship between Ms. Martinez and Sarah Doe other than a student-teacher relationship.  *See* Appendix at ¶ 24-28.

11.     Sarah Doe had been attending math tutoring with Ms. Martinez both before school and after school since October 2010.  *See* Appendix at ¶ 6.  Jane Doe was aware that Sarah Doe was attending tutoring with Ms. Martinez before and after school, and that they communicated at least twice a day by text.  *See* Appendix at ¶ 7.

12.     Ms. Martinez and Sarah Doe spent time together off campus on a number of occasions, of which the District and Mr. Aslin were unaware.  *See* Appendix at ¶¶ 12-16.  Specifically, Sarah Doe and her family went to Ms. Martinez' house when Sarah Doe asked if they could stop by while they were in her neighborhood on Halloween and New Year's Eve of 2010.  *See* Appendix at ¶¶ 12, 15.  On another occasion, Jane Doe drove Sarah Doe to attend Ms. Martinez' softball game.  *See* Appendix at ¶ 14.  Additionally, Ms. Martinez was allowed to pick up and drop off Sarah Doe from her home to attend a softball game for another student.  *See* Appendix at ¶ 13.

13.     Ms. Martinez and Sarah Doe became physically intimate both on and off campus beginning in early December 2010.  *See* Appendix at ¶¶ 17, 18.  Specifically, they engaged in kissing and fondling in Ms. Martinez' classroom approximately 5 – 10 times.  *See* Appendix at ¶

17.   Additionally, Sarah Doe snuck out of her house on three occasions during the weekend and winter break to meet Ms. Martinez in her car where they engaged in kissing and fondling. *See* Appendix at ¶ 18.

14.   The same day the inappropriate relationship was discovered,  Ms. Martinez was sent to Human Resources were she admitted to the inappropriate relationship, resigned, and was arrested for Indecency with a Child and Improper Relationship between Educator and Student. *See* Appendix at ¶ 4.  After Ms. Martinez' initial arrest and release from jail, Ms. Martinez was remanded into police custody due to her continued contact with Sarah Doe via Skype and cell phone. *See* Appendix at ¶ 5.  On June 22, 2011, Ms. Martinez pled guilty to Online Solicitation of a Minor, and Indecency with a Child by Contact, and agreed to two concurrent 10 year terms. *Id.*

15.   As set forth below, Plaintiffs cannot demonstrate that NISD is liable under § 1983 because they cannot show that Sarah Doe's alleged constitutional deprivations were the result of the actions of an official policymaker for NISD.  Nor can she demonstrate that any NISD official policy or custom was the "moving force" behind her alleged constitutional deprivations.

16.   Likewise, Plaintiffs cannot demonstrate that Vice Principal Aslin is liable under § 1983 because they cannot prove that he had actual knowledge of sexual abuse, or that he acted with deliberate indifference to Sarah Doe's constitutional rights.

17.   Plaintiffs' § 1983 claim against Mr. Aslin in his official capacity is redundant and should be dismissed as a matter of law.  Additionally, Plaintiffs request for punitive damages against the District and Vice Principal Aslin in his official capacity under section 1983 claims should be dismissed as a matter of law.

18.     NISD cannot be held liable under Title IX, because no person with supervisory power over Defendant Nora Martinez had actual notice of sexual harassment; nor did any such supervisor respond to known acts of harassment with deliberate indifference.

19.     Lastly, Plaintiffs' state-law tort claims against the District and Vice Principal Aslin should be dismissed as a matter of law, including any claims for punitive damages under this theory.

## V.
## ARGUMENTS AND AUTHORITIES

**A.**     ***Plaintiffs' State Tort Claims Should be Dismissed Against the District and Vice Principal Aslin for Lack of Jurisdiction***

20.     Plaintiffs bring state law tort claims for assault, assault and battery, and improper relationship between educator and student.  *See* Dkt. No. 1 at ¶ 36.  Plaintiffs do not indicate against whom they bring the state law tort claims.  *Id.*   However, it is presumed that Plaintiffs' state law tort causes of action regarding assault, assault and battery, and improper relationship between an educator and student are all directed to Defendant Martinez, since the elements supporting such a claim against NISD or Mr. Aslin have not been alleged.  Nonetheless, NISD and Mr. Aslin are entitled to dismissal regarding these claims as a matter of law as set forth below.

21.     As a governmental agency, Defendant NISD is immune from all state law intentional torts except those for which immunity has been waived.  *Toungate v. Bastrop Indep. Sch. Dist. v. Bastrop Indep. Sch. Dist.,* 842 S.W. 2d 823, 828 (Tex. App.—Austin 1992, no writ); *see also Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208, 211 (Tex. 1989).  Additionally, any legislative waiver of governmental immunity must be clear and unambiguous.  *Toungate,*

842 S.W.2d at 828. The Texas Tort Claims Act is a statutory waiver of sovereign immunity applicable to tort-based causes of action. TEX. CIV. PRAC. & REM. CODE §§ 101.001 *et seq.* However, it is a limited waiver. *Ramos v. City of San Antonio,* 974 S.W.2d 112, 116 (Tex. App.—San Antonio 1998, no writ). Under the provisions of sections 101.021 and 101.051 of that Act, a school district may be liable only on causes of action arising from the use or operation of motor vehicles, which is not alleged in this case. *See Pierson v. Houston Indep. Sch. Dist.,* 698 S.W.2d 377 (Tex. App.—Houston [14th Dist.] 1985, writ refused n.r.e.).

22.     It is equally clear that the Texas Tort Claims Act does not waive governmental immunity from punitive damages. *See* TEX. CIV. PRAC. REM. CODE § 101.024; *Fairfield Insur. Co. v. Stevens Martin Paving, L.P.,* 246 S.W.3d 653, 682 n.59 (Tex. 2008).

23.     Finally, Mr. Aslin in his official capacity is entitled to qualified immunity for these claims (discussed *infra.*). Accordingly, Defendants NISD and Mr. Aslin request that the Court dismiss Plaintiffs' state tort law claims against the District and Mr. Aslin, including any claims for punitive damages for tort claims, for want of jurisdiction under the doctrine of governmental immunity.

**B.     *Plaintiffs' § 1983 Claims***

      **i.     Plaintiffs Cannot Maintain a Claim for Punitive Damages Against the District or David Aslin in his Official Capacity as a Matter of Law Under Section 1983**

24.     Plaintiffs' Original Complaint seeks, inter alia, punitive damages from the District. *See* Dkt. No. 1 at ¶ 29. It is well established that punitive damages are not available against a government agency or political subdivision under section 1983. *Oden v. Oktibbeha Cty., Miss.,* 246 F.3d 458, 465-66 (5th Cir. 2001); *see also* 42 U.S.C. § 1981a (b)(1) (expressly precluding an

- 7 -

award of punitive damages).  Plaintiffs similarly cannot recover punitive damages against Vice Principal Aslin in his official capacity as a matter of law.  *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (punitive damages not recoverable against municipalities and persons acting in official capacity).

25.    Accordingly, Plaintiff's claim for punitive damages against the District and Mr. Aslin in his official capacity under section 1983 should be dismissed, as a matter of law.

### ii.    Section 1983 claim against David Aslin in his official capacity is redundant

26.    Plaintiffs do not make clear whether they bring a § 1983 claim against Vice Principal David Aslin in his official or individual capacity, or both.  *See* Dkt. No. 1 at ¶¶ 25-27.  However, it is well established that suing a government official in his or her official capacity is another way of pleading against the entity of which the official is an agent.  *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 2036 n. 55. 56 L.Ed.2d 611 (1978).  An official capacity suit is to be treated as a suit against the entity itself.  *Kentucky,* at 171, 105 S.Ct. 3009.  Accordingly, the Court should dismiss the section 1983 claim against Vice Principal Aslin in his official capacity because the claims are redundant because of the section 1983 claim against the District.

### iii.    NISD is not Liable Under § 1983

27.    Plaintiffs assert a section 1983 claim against NISD based on alleged violations of the equal protection clause and constitutional right to bodily integrity.  *See* Dkt. No. 1 at ¶ 23-27.

28.    To succeed on their 1983 claims, Plaintiffs must establish (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the

policy or custom. *Pitrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001). Plaintiffs

must demonstrate all three requirements to prevail. *Id.* Plaintiffs cannot prove any element of

the requisite elements, as show below.

### *(a)   No policymaker identified*

29.    To meet the first requirement, Plaintiffs must "identify a municipal policymaker who

could be held responsible, through actual or constructive knowledge, for enforcing a policy that

caused [the student's] injuries." *Pitrowski,* 237 F.3d at 578-79. "Actual or constructive

knowledge of a custom must be attributable to the governing body of the municipality or to an

official to whom that body has delegated policy-making authority." *Id.* at 579 (quoting *Webster*

*v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984)(en banc)).

30.    Whether a district employee has policy-making authority is a matter of state law. *St.*

*Louis v. Praprotnik,* 485 U.S. 112, 128 (1988). In Texas, "the final policy-making authority in

an independent school district rests with the district's board of trustees." *Eugene v. Alief Indep.*

*Sch. Distr.,* 65 F.3d 1299, 1304 (5th Cir. 1995)(internal citations omitted); TEX. EDUC. CODE §§

23.01 & 23.26(b) & (d). Accordingly, it is the board of trustees, not the board in combination

with any subordinate school district officials (i.e. teachers, principals, or superintendents) that is

the "official policymaker" for section 1983 liability. *Rivera v. Houston Indep. Sch. Dist.,* 349

F.3d 244, 247-48 (5th Cir. 2003).

31.    In order to support their claims, Plaintiffs merely allege that the "NISD designation of

Vice Principal Aslin amounted to designation of policy-making authority." Dkt. No. 1 at ¶ 30.

Such arguments have been rejected by the Fifth Circuit; that is, without direct evidence, a

plaintiff cannot prevail on an argument that policy-making authority has been impliedly

delegated to a school principal, much less a vice principal.  *Eugene,* 65 F.3d at 1304.  Thus, Plaintiffs' effort to label Vice Principal Aslin as a policymaker merely because the Board gave him the title of "Vice Principal" is wholly insufficient to establish that he had any policy-making authority.  The board has also not delegated any policy making authority to subordinate school district personnel.

32.     Plaintiffs also appear to assert that because Mr. Aslin was the campus Title IX coordinator, he had policymaking authority.  *See* Dkt. No. 1 at ¶ 30.  However, Plaintiffs fail to show how the campus Title IX coordinator would have the authority to create a custom, policy and/or practice regarding the reporting of sexual assaults that would supplant the District's official published reporting policy approved by the only legally recognized policymaker for the District – the Board of Trustees.  Because Plaintiffs have failed to identify a policymaker for purposes of section 1983 liability, their section 1983 claims fail.  Accordingly the District should be granted summary judgment as to this claim as a matter of law.

> **(b)     *Plaintiffs identify no offending policy or custom***

33.     Assuming *arguendo* that Plaintiffs could identify a proper policymaker, Plaintiffs must next demonstrate that Sarah Doe's rights were violated through the execution of an official NISD policy, or a persistent widespread practice that is so common and well-settled "as to constitute a custom that fairly represents district policy."  *Eugene,* 65 F.3d at 1304.  Contrary to meeting this requirement, Plaintiffs have admitted that the District has had policies in place regarding the prevention of sexual harassment.  *See* Ex. A1 (John Doe Depo.) at 133:3-13;  Ex. A2 (Jane Doe Depo.) at 132:14-18.  These policies were in place during the 2010-2011 school year.  *See* Ex. B1.  Additionally, Plaintiffs have no evidence to establish a persistent, widespread custom.

Rather, Plaintiff vaguely reference "custom" in alleging that Vice Principal Aslin and Donna Rogers failed to report, investigate and discipline Ms. Martinez.  *See* Dkt. No. 1 at ¶ 28.  A general allegation against two NISD employees hardly demonstrates a "persistent widespread practice" in the entire district.  Even when taking Plaintiffs' allegations as true, "isolated unconstitutional actions by municipal employees will almost never trigger liability."  *Pitrowski,* 237 F.3d at 578 (citations omitted).

34.     Accordingly, Plaintiffs have not and cannot establish a policy or custom, and the District should be granted summary judgment as a matter of law.

### (c)   *Plaintiffs fail to demonstrate that any NISD policy was the "moving force behind Sarah Doe's alleged injuries*

35.     Assuming *arguendo* that Plaintiffs could identify a proper policymaker and a policy or custom, for Plaintiffs to succeed, they must next directly link some unconstitutional custom or policy to Sarah Doe's injuries by demonstrating that through its deliberate conduct, NISD's policy or custom was the "moving force" behind the injuries alleged.  *Bd. of the County Comm'rs of Bryan County, Oklahoma,* 520 U.S. at 404.  "This means 'there must be a direct causal link' between the policy and the [unconstitutional] violation."  *Peterson v. City of Fort Worth Tex.,* 588 F.3d 839, 847-48 (5th Cir. 2009)(quoting *Pitrowski,* 237 F.3d at 580).  Plaintiffs have simply failed to even allege facts demonstrating an inadequate custom, policy or procedure or how the policy or custom caused Sarah Does injuries.

36.     Plaintiffs cannot establish even one requisite element to hold the District liable under section 1983, and the District should be granted summary judgment as a matter of law.

### iv.     Vice Principal Aslin is not Liable Under § 1983

37.     In § 1983 actions,

> a supervisory school official can be held personally liable for a subordinate's
> violation of an elementary or secondary school student's constitutional right to
> bodily integrity in physical sexual abuse cases if the plaintiff establishes that: 1)
> the defendant learned of facts or a pattern of inappropriate sexual behavior by a
> subordinate pointing plainly toward the conclusion that the subordinate was
> sexually abusing the student; and 2) the defendant demonstrated deliberate
> indifference toward the constitutional rights of the student by failing to take action
> that was obviously necessary to prevent or stop the abuse; and 3) such failure
> caused a constitutional injury to the student.

*Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 454 (5th Cir. 1994).  Thus, to establish that Mr.

Aslin is liable for Nora Martinez' actions under § 1983, Plaintiffs must demonstrate: 1) he

learned of facts that pointed plainly toward the conclusion that Martinez sexually abused Sarah

Doe, and 2) armed with that knowledge, he "failed to take clearly necessary steps to prevent"

Martinez' abuse of Sarah Doe.  *Hogan v. Houston Indep. Sch. Dist.,* 51 F.3d 48, 52 (5th Cir.

1995).

#### (a)     Vice Principal Aslin did not have the requisite knowledge

38.     Vice Principal Aslin never suspected that Nora Martinez was sexually abusing Sarah

Doe.  *See* Appendix at ¶¶ 22-24.  Although Mr. Aslin had concerns about Ms. Martinez being too

friendly or "buddy-buddy" with her students, he never drew the conclusion that Martinez was

sexually abusing Sarah Doe or any student.  *Id.*

39.     *King v. Conroe Indep. Sch. Dist.,* a case similar to the one here, an inappropriate

relationship between a female coach and an eighth grade female student occurred.  *King v.*

*Conroe Indep. Sch. Dist.,* 289 Fed. App'x 1 (5th Cir. 2007).  In *King,* the sexual relationship

lasted several years. *Id.* at *1.  A parent complained to the principal that her son stated a female

student and female coach were having an "affair" and that he had seen them kissing and passing notes.  *Id.* at *2.  After the complaint, the principal and vice-principal met with the coach, who denied any inappropriate relationship.  *Id.*   The administrators warned her to keep her relationships with students professional at all times, and no further action was taken.  *Id.*  The sexual abuse persisted for three and a half years.  *Id.*  The district court found that the principal "did not have sufficient knowledge of the sexual relationship to make his failure to take further action deliberate indifference to [the student's] constitutional rights."  *King v. Conroe Indep. Sch. Dist.,* 2005 WL 1667803, No. H-03-1295 at *2 (S.D. Tex. July 15, 2005), *aff'd,* 289 Fed. Appx, 1 (5th Cir. 2007).  The Fifth Circuit further upheld the lower court's grant of summary judgment as to the Title IX claim against the district.  *Id.* at *3.

40.     Similar to *King,* in the instant case, based on the information he had, Mr. Aslin warned Martinez to act professionally with her students.  *See* Appendix at ¶22-24.  The information available to Mr. Aslin simply did not point "plainly toward the conclusion" that Ms. Martinez was sexually abusing Sarah Doe.  It is only with the benefit of hindsight that Plaintiffs are able to raise any question regarding the nature of Nora Martinez and Sarah Doe's sexual relationship. However, a court cannot use hindsight to determine what knowledge and understanding school officials should have had at the time of the sexual abuse.  *See Brown v. Callahan,* 623 F.3d 249, 253(5th Cir. 2010)(citation omitted); *see also, Gros v. City of Grand Prairie, Texas,* 209 F.3d 431, 436 (5th Cir. 2000)(in determining deliberate indifference, the court must view decision of governmental actor at time of event, not "with the benefit of hindsight"); *Hagan,* 51 F.3d at 52 (examining allegation of deliberate indifference based solely on the knowledge of the school official at the time of each event, and not with the benefit of hindsight); *Porto v. Town of*

- 13 -

*Tewksbury,* 488 F.3d 67, 74 (1st Cir. 2007)(holding the test for liability is not one of effectiveness by hindsight"); *Doe ex rel. Doe v. City of Roseville,* 296 F.3d 431, 440-41 (6th Cir. 2002)(holding courts "cannot weave threads of [a pattern of sexual abuse] on the loom of hindsight" but must determine whether state actors are "confronted with conduct that was obvious, flagrant, rampant and of continued duration, rather than isolated occurrences").

41.    In *Hagan,* the principal was told by a student that the football coach "pinched and patted him on the buttocks." *Hagan,* 51 F.3d at 50. The coach admitted to the patting, but claimed it was a "coaches' gesture." *Id.* The Court held that this single incident, even in light of serious subsequent allegations of inappropriate sexual behavior, was insufficient to put the principal on notice that the coach was a threat to students. *Id.* at 52. In *Gebser v. Lago Vista Indep. Sch. Dist.,* the Supreme Court found no knowledge of the risk that a teacher may engage in sexual relations with a student based on the complaints of two families and several students that the teacher was making sexually suggestive comments in class. *Gebser v. Lago Vista Indep. Sch. Dist.,*524 U.S. 274, 291 (1998).

42.    In sum, Plaintiffs have no evidence of any event that points "plainly toward the conclusion" that Ms. Martinez was a threat to Sarah Doe. Mr. Aslin's review of surveillance video was not based on suspicion of sexual abuse. *See* Appendix at ¶ 22. Rather, Mr. Aslin believed that Ms. Martinez was acting too friendly with her students in general, including Sarah Doe. *See* Appendix at ¶ 21-22. As shown on that video, the only physical contact between Ms. Martinez and Doe were a hug and a "hip-check". *Id.* As seen on video clips attached as evidence, the hug was not sexual or physically intimate in nature, but a short, quick greeting-type hug typical among friends and that would not arouse suspicions concerning any type of

harassment or abuse.  *See* Ex. B4 to Appendix.  These video clips do not even hint at any sexual abuse much less "point plainly towards" that conclusion.  Indeed, Jane Doe herself witnessed Ms. Martinez and Sarah hug when they went to Martinez' house on New Year's Eve, and it did not cause her concern.  *See* Appendix at ¶ 15.  Jane Doe also unequivocally stated a hug she saw after a volleyball game did not cause her to conclude an inappropriate relationship was afoot. *See* Appendix at ¶ 16, f.n.2 (Jane Doe Depo. 63:20-25 ("Q. And when you saw this hug between Ms. Martinez and Sarah at the volleyball game, you said that you felt it was not appropriate.  Did you feel like that it was suggestive of perhaps that there was something more to the relationship. A. No."); 66:18-22 ("Q. …When you saw Ms. Martinez hugging your daughter at the volleyball game, did it cross your mind that perhaps they might be having some sort of sexual relationship? A. No.")).  Even considered in the light most favorable to Plaintiffs, Ms. Martinez' conduct with Sarah Doe was not nearly as overtly sexual as either the coach's actions in *Hagan*, or the teacher's comments in *Gerbser*.

43.     In sum, Mr. Aslin did not have the requisite knowledge or information pointing plainly toward the conclusion that Ms. Martinez was sexually abusing the student, and thus, the section 1983 claim against Mr. Aslin should be denied.

### *(b)     Vice Principal Aslin Did Not Act with Deliberate Indifference*

44.     Even if Plaintiffs could establish Mr. Aslin had any actual knowledge, which Defendants deny, Plaintiffs cannot establish that Mr. Aslin acted with deliberate indifference.  The Fifth Circuit has consistently held that the "[t]he deliberate indifference standard is a high one," and "[a]ctions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."  *Doe v. Dallas*

*Indep. Sch. Dist.,* 153 F.3d 211, 219 (5th Cir. 1998).  Even "a tragic error in judgment does not create a genuine issue of material fact as to whether [an official] acted with deliberate indifference." *Id.*

45.     In *Doe v. Dallas Indep. Sch. Dist.,* the principal learned of a teacher's sexual assault of a student and immediately met with the child, his mother, and the teacher.  *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d at 218-19.   After hearing all parties' explanations of the event, she determined that the child was fabricating the story, and she took no action other than verbally warning the teacher to monitor his behavior more closely.  *Id.* at 219.  The Court held "[t]he fact that [the principal] misread the situation and made a tragic error in judgment does not create a genuine issue of material fact as to whether she acted with deliberate indifference." *Id.*

46.     Further, in *Gonzalez v. Ysleta Indep. Sch. Dist.,* a teacher was accused of allowing female students to sit on his lap, placing his hands around the waist of a student, and placing his arms around a student and putting his tongue in her ear.  *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 747-48 (5th Cir. 1993).  The school took no action against the teacher, but when a parent who was also a school board member pushed the issue, the board voted to transfer the teacher to a new school.  *Id.* at 749.  Approximately a year after this transfer, the teacher sexually assaulted the plaintiffs' daughter, a first grader, by touching her vagina.  *Id.* at 749.  The Fifth Circuit held the board's decision to transfer the teacher was not deliberately indifferent, even though it placed other students at risk and went against the district's history of removing any teacher who had been accused of sexual assault or harassment from contact with students.  *Id.* at 762.  The Court noted that the board's actions were not obviously inadequate, given the circumstances.  *Id.*

- 16 -

47.    In the instant case, Mr. Aslin believed that Ms. Martinez had boundary issues with her students in that she acted too friendly or chummy, and blurred the line between educator and friend.  *See* Appendix at ¶¶ 21-24.  He observed her interactions, and then took appropriate actions.  *See* Appendix at ¶¶ 20-23.  Specifically, he advised Ms. Martinez not to allow student's in her classroom during her conference period.  *See* Appendix at ¶ 20.  He and other officials also warned her not to allow students behind her desk where they could have access to others' grades and personal information.  *See* Appendix at ¶ 21, 27-28.  Lastly, regarding the hug and "hip-bump" in the video, he directed her to cease the unprofessional behavior.  *See* Appendix at ¶¶ 22-23.  At no time did Mr. Aslin ever suspect Ms. Martinez' behavior indicated any kind of sexual behavior towards any student, including Sarah Doe.  *See* Appendix at ¶ 24.  He believed he adequately responded to Ms. Martinez' unprofessional behavior by addressing her directly and did not at any point believe Sarah Doe was in danger.  *See* Appendix at ¶¶ 23-34.

48.    Plaintiff has no evidence demonstrating that Mr. Aslin's actions or inactions amounted to deliberate indifference.  Therefore, Plaintiffs have failed to demonstrate any fact issue exists concerning individual liability under section 1983, and summary judgment should be entered in favor of Defendants NISD and Mr. Aslin.

### C.    *Vice Principal Aslin is Entitled to Qualified Immunity*

49.    It is well-established that governmental officials who are performing discretionary functions are entitled to qualified immunity.  *Anderson v. Creighton,* 483 U.S. 635, 638 (1985).  "A qualified immunity defense alters the usual summary judgment burden of proof.  Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by

establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown,* 623 F.3d at 253.

50.     "The qualified immunity standard 'gives ample room for mistaken judgments' … by protecting 'all but the plainly incompetent or those who knowingly violate the law." *Depree v. Saunders,* 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Molle v. Briggs,* 475 U.S. 335, 341, 343 (1986)).  To defeat an assertion of qualified immunity, a plaintiff must (1) allege a violation of a clearly established constitutional right; and (2) prove the defendant's conduct was objectively unreasonable in the light of clearly established law at the time of the incident.  *Felton v. Polles.* 315 F.3d 470, 477 (5th Cir. 2002); *Borrow v. Greenville Indep. Sch. Dist.,* 332 F.3d 844, 846 (5th Cir. 2003).  "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Brown,* 623 F.3d at 253.  "The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations."  *Id.*  A defendant's acts are objectively unreasonable only if "*all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution."  *Felton,* 315 F.3d at 477-78 (citations omitted)(emphasis in original).

51.     In the instant case, Plaintiffs cannot demonstrate that Mr. Aslin's conduct was objectively unreasonable.  Although Aslin was concerned with Martinez' unprofessional demeanor with her students, including Sarah Doe, it was not objectively unreasonable to fail to conclude that Ms. Martinez was sexually abusing Sarah Doe.  The most egregious actions Mr. Aslin observed were a hug in the hallway and Sarah Doe "hip-checking" Ms. Martinez.  By warning Ms. Martinez her over-friendly interactions with her students, including Sarah Doe, were unprofessional and

needed to stop, Mr. Aslin acted reasonably and in good faith.  "We can foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations, e.g., *warning the state actor*, notifying the student's parents, or removing the student from the teacher's class."  *Doe I,* 153 F.3d at 219. (*quoting Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 456 n. 12 (5th Cir. 1994)(en banc)(emphasis added); *see also, Davis,* 526 U.S. at 648, 119 S.Ct. 1661 (refusing to hold that administrators must engage in particular disciplinary action to avoid liability).

52.    Plaintiffs also cannot prove that all reasonable school officials in the same position would have known that Ms. Martinez was sexually abusing Sarah Doe.  Construing the evidence in the light most favorable to the Plaintiffs, a surveillance video showing a hug and a hip-bump was insufficient to put Mr. Aslin or any District official on notice of any risk of Sarah Doe's constitutional rights.  For these reasons, Vice Principal Aslin is entitled to qualified immunity from Plaintiffs' claims.

## D.    *Plaintiffs' Title IX Claim*

53.    Title IX provides in pertinent part, that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a). Under Title IX, recovery from a school district "requires proof that (1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the harassment and (3) responded with deliberate indifference.  *Gebser,* 524 U.S. at 290.  Plaintiffs cannot demonstrate that NISD is liable under Title IX for any District official's actions.

- 19 -

54.     With regard to the "actual notice" requirement, Title IX liability may not be imposed upon a school district when the official with the requisite authority either: (1) "did not know of the underlying facts indicating a sufficiently substantial danger;" or (2) "knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."   *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 659 (5th Cir. 1997)(quotations omitted).  Thus, in order for Plaintiff to prove actual notice, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he *must also draw the inference*." *Id.* at 658 (emphasis added).

55.     Plaintiffs' allegations, taken in a light most favorable to them, show only that District officials believed Ms. Martinez was overly friendly or chummy with her students.  *See* Appendix at ¶¶ 24, 29.  No District official ever drew the inference that Ms. Martinez was sexually abusing Sarah Doe.  *Id.*  Plaintiffs' allegations that Mr. Aslin should have inferred that Ms. Martinez posed a risk as a sexual predator is nothing more than an attempt to apply a "should have known" standard to demonstrate constructive notice, which the courts have expressly held is insufficient under Title IX.  *Rosa H.,* 106 F.3d at 656.

56.     Even assuming *arguendo* that Plaintiffs could establish the requisite actual notice, as shown above, neither Mr. Aslin, nor any other District official acted with deliberate indifference. The deliberate indifference prong of the Title IX test is identical to the test under § 1983. *Gerbser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 247, 290-291 (1998)(citations omitted); *Doe, ex. rel. Doe v. Dallas Indep. Sch. Dist.,* 220 F.3d 380, 388 (5th Cir. 2000).  Incorporating the section 1983 analysis *supra,* Plaintiffs cannot show that Mr. Aslin or any other District official

acted with deliberate indifference.  Not able to demonstrate either actual notice or deliberate indifference, Plaintiffs' Title IX action fails.

57.     Notwithstanding and without waiving the foregoing, Title IX only provides a basis of liability where the behavior at issue denies the plaintiff equal access to educational opportunities. 20 U.S.C. § 1681(a); *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 652 (1999).  That is, the harassment must have a "concrete, negative effect" on the victim's education.  *Id.* at 654.  It is undisputed that Sarah Doe successfully moved on to high school, continues to make good grades, participates in sports, has not given up any hobbies, and intends to go to college.  *See* Appendix at ¶5.  Nothing in the record shows that NISD denied Sarah Doe any education opportunities, and her Title IX claim should be denied.  *See Gabrielle M. v. Il Sch. Dist.163,* 315 F.3d 817, 823 (7th Cir. 2003).

## VI.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants, NISD and Mr. Aslin urge this Court to deny Plaintiffs any and all relief demanded in their Original Compliant.  Further, Defendants pray their Motion for Summary Judgment and Partial Summary Judgment be granted and that it be ordered that Plaintiffs take nothing by this suit.  Defendants also request an award of reasonable attorneys' fees and costs of suit.  Finally, Defendants request the Court grant such other and further relief, both general and specific, in law or at equity, as the Court deems just and proper.

Respectfully submitted,

WALSH, ANDERSON, GALLEGOS
GREEN & TREVIÑO, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas  78216
TEL NO. (210) 979-6633
FAX NO. (210) 979-7024

By:     /s/ D. Craig Wood
D. CRAIG WOOD
State Bar No. 21888700
ELENA P. SERNA
State Bar No. 24072335

ATTORNEYS FOR DEFENDANT NORTHSIDE
INDEPENDENT SCHOOL DISTRICT AND
DAVID ASLIN

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2012, a true and correct copy of the above and foregoing Defendants' Northside Independent School District and David Aslin's Motion for Summary Judgment and Motion for Partial Dismissal was electronically filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

Mr. Jesse E. Guerra Jr.
The J. Guerra Law Firm, PLLC
Furman Plaza
418 Peoples St., Suite 400
Corpus Christi, Texas 78401

Ms. Beth S. Janicek
Janicek Law Firm, PC
1100 NW Loop 410, Suite 550
San Antonio, Texas 78209

/s/ D. Craig Wood