# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| **JOHN AND JANE DOE, AS NEXT** | § | |
| **FRIEND OF SARAH DOE** | § | |
| | § | |
| **v.** | § | **SA-11-CV-412-XR** |
| | § | |
| **NORTHSIDE I.S.D., ET AL.** | | |

## ORDER

On this day came on to be considered Defendants' motion for summary judgment (doc. no. 49), Defendants' motion to exclude expert testimony (doc. no. 51), and Plaintiffs' motion for sanctions (doc. no. 52).

## Background

Sarah Doe was a middle school student in a Northside I.S.D. school.[1]  Nora Martinez was a teacher at NISD's middle school for approximately 7 years.[2]  Sarah Doe's parents allege that on January 23, 2011, they discovered that Nora Martinez,[3] was having an inappropriate relationship with Sarah.  The next day they went to the school and relayed their concerns and showed school administrators the cell phone text messages that they discovered.  On January 24, 2011, Ms. Martinez admitted to an improper relationship and resigned her employment.[4]  School

---

[1] For privacy concerns the Plaintiffs' names have been redacted.  In addition, the name of the middle school will not be stated in this order.

[2] By all accounts she was a popular teacher with students, assisted with math tutoring and volunteered staffing the time clock at school athletic events.

[3] The District and Vice Principal David Aslin stipulate in their motion for summary judgment that Sarah's parents became aware of the inappropriate relationship when they discovered sexual text messages between Ms. Martinez and Sarah on Sarah's cell phone.

[4] The Complaint further alleges that "Ms. Martinez has since been arrested for indecency with a child and improper relationship between an educator and student after admitting to performing numerous sexual acts with Sarah Doe, including but not limited to caressing and kissing Sarah Doe's breasts and massaging her genitalia."  The District stipulates that Ms. Martinez has pled guilty to online solicitation of a minor and indecency with a child by contact. She was sentenced to two concurrent 10 year terms.

officials thereafter contacted Texas Child and Protective Custody officials and law enforcement officials.

Sarah Doe's parents complain that the District and school vice-principal David Aslin failed to warn them that Ms. Martinez was engaged in inappropriate acts with Sarah.  In addition, Plaintiffs allege that the Defendants were deliberately indifferent to Sarah Doe.

Plaintiffs allege that as early as 2006, Ms. Martinez was using district computers to communicate with students via My Space and Facebook in violation of NISD policy.[5]  Plaintiffs further allege that Mr. Aslin knew that on November 10, 2010, Sarah Doe spent 15 to 20 minutes in Ms. Martinez's classroom for no authorized reason.[6]  Plaintiffs allege that on November 12, 2010, department coordinator Donna Rogers "observed and raised concerns about Ms. Martinez having students in her classroom and behind her desk after 4:00 p.m."[7]  Sometime in late October or November, 2010, Ms. Rogers also counseled Ms. Martinez about sending texts to students.[8]

---

[5] In 2006, Milissa Martinez, a parent at the middle school, apparently became aware of a MySpace conversation between teacher Nora Martinez and a female student.  Ms. Milissa Martinez states in an affidavit that the "interchange was concerning to [her] because [she] considered Ms. Martinez's remarks to be threatening to [her] son when she commented that she would 'kill him' if he hurt the girl."  Milissa Martinez states that she printed the MySpace exchange and gave a copy of the pages to middle school Principal Glenda Munson.  She also states that she spoke to some unspecified person at the NISD police department.  She states she was never contacted again from either the middle school or NISD about her complaint.  Doc. No. 56-5.  Middle School Principal Glenda Munson testified that she asked Grantley Boxill in the Human Resources Department to access the MySpace page at issue; she and Mr. Boxill concluded that Ms. Martinez did not use appropriate language; she counseled Ms. Martinez about professionalism; Ms. Martinez apologized to her and thereafter removed her MySpace page.  Munson Depo at pp. 43-44.
[6] Ms. Martinez was not assigned to teach Sarah any subject.  Plaintiffs further allege that Mr. Aslin and the chair of the math department had discussed why Sarah was spending too much time "behind her desk and in the classroom since Sarah Doe was not even her student."
[7] Mr. Aslin testified that he and Ms. Rogers met with Ms. Martinez and informed her that she should not allow students in her classroom during her conference period and that she should send any student who visits her classroom to their regularly scheduled class.  Aslin Depo at p. 41.
[8] Rogers Depo at pp. 17-19.

Plaintiffs also allege that in November or December 2010, a student informed school administration staff that an inappropriate relationship existed between Ms. Martinez and Sarah Doe.[9]

Plaintiffs further allege that in November or December 2010, NISD officials reviewed a "surveillance video of Ms. Martinez and Sarah Doe exhibiting inappropriate physical contact after school hours and on school premises."[10]  In addition, Plaintiffs allege that on December 2, 2010, and December 6, 2010[11], Mr. Aslin received information that Ms. Martinez was continuing to allow students, including Sarah Doe, behind her desk after 4:00 p.m.[12]

On December 13, 2010, Mr. Liendo sent an email to Sandra Marks in NISD Human Resources Department containing video attachments.  The email stated that "Here are some of the video dates and times that cause some concern."[13] On December 14, 2010, Mr. Liendo again counseled Martinez.[14]

On January 12, 2011, Mr. Liendo sent an email to Martinez again instructing her not to allow students near her desk area because of possible FERPA privacy violations.[15]

---

[9] Plaintiffs have not presented the Court with any competent evidence to support this allegation.

[10] The District and Mr. Aslin stipulate that on or about December 2, 2010, Mr. Aslin reviewed a surveillance video for "possible boundary issues" after another teacher, Donna Rogers, informed him that Sarah Doe and other students were "going to Ms. Martinez's room for tutoring before and after school."  Mr. Aslin testified that he did not view Ms. Martinez's actions on the tape as "being professional."  In the video, Mr. Aslin saw Ms. Martinez skipping down the hall with a student, doing a "chest bump" and doing a hip bump with a student.  Aslin Depo at p. 28. Boxill Depo at p. 68.

[11] Mr. Aslin testified that on December 6, 2010, he called Ms. Martinez into his office.  Prior to that meeting he had reviewed some surveillance video.  Based on his review of the video Mr. Aslin testified that "in [his] professional opinion, [he] thought [Ms. Martinez] was becoming too friendly with students and [he] wanted to address that.  [He] also wanted to make sure that [Ms. Martinez] was on task when it came to her after-school tutoring."  Aslin Depo at p. 26.  Mr. Aslin testified he told Ms. Martinez that she needed to be "more professional in her relationship with all the kids and that that behavior needed to cease immediately."  Aslin Depo at p. 29.

[12] On or about January 12, 2011, the Academic Dean/Vice Principal, Jaime Liendo, sent an email to Martinez telling her that because of federal education regulations and privacy concerns that students should not be allowed to be near her desk.  Liendo Depo at pp. 19-21.

[13] Doc. No. 49-14, Exhibit C-1.

[14] Doc. N0. 49-14, Exhibit C-2.

[15] Doc. No. 49-14, Exhibit C-3.

**Plaintiffs' Complaint**

Plaintiffs brings claims under 42 U.S.C. § 1983 against NISD, David Aslin and Nora Martinez.   Specifically, Plaintiff pleads as follows:  (1) David Aslin violated 42 U.S.C. § 1983 by denying "Sarah Doe's [14[th] Amendment] rights to equal protection of the laws by discriminating against her in her student capacity at [] Middle School on the basis of her sex by indifference to Ms. Martinez's sexual harassment and assault of student Sarah Doe"; (2) David Aslin violated "Sarah Doe's constitutionally protected right to bodily integrity and to be free from intrusions while attending a public, required course of education"; (3) David Aslin "was deliberately indifferent to the risk that Martinez would sexual harass and assault minor students, [sic] as Sarah Doe, and denied Sarah Doe her right to equal protection under laws by discriminating against Sarah Doe on the basis of her sex"; and (4) "Sarah Doe's sexual assault and deprivation of constitutional rights resulted from the NISD School Board, as NISD policy maker, and through its designated Title IX compliance coordinator, Vice Principal David Aslin and, head of the math department and Martinez supervisor, Donna Rogers that their custom, policy and/or practice of failing to report, investigate and discipline Martinez for previous complaints of improper actions towards students, including Sarah Doe.  The NISD designation of Vice Principal Aslin amounted to a designation of policy-making authority."

Plaintiffs also bring a claim under Title IX, 20 U.S.C. §§ 1681, et seq. against NISD alleging that the District was "deliberately indifferent to the sexual harassment and discrimination against Sarah Doe."

Finally, Plaintiff brings state law claims of assault, battery and improper relationship between educator and student against Nora Martinez.

4

**Summary Judgment Standard**

Summary judgment is proper only when the movant can demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. To defeat a properly pled motion for summary judgment, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The court must resolve factual controversies in favor of the nonmoving party.  However, the nonmoving party cannot satisfy its burden merely by establishing some metaphysical doubt as to the material facts, by conclusory allegations in affidavits, or by only a scintilla of evidence.

**Defendants' Motion for Summary Judgment**

Defendants NISD and Aslin argue:  (1) "Plaintiffs cannot demonstrate that NISD is liable under § 1983 because they cannot show that Sarah Doe's alleged constitutional deprivations were the result of the actions of an official policymaker for NISD. Nor can she demonstrate that any NISD official policy or custom was the 'moving force' behind her alleged constitutional deprivations"; (2) "Plaintiffs cannot demonstrate that Vice Principal Aslin is liable under § 1983 because they cannot prove that he had actual knowledge of sexual abuse, or that he acted with deliberate indifference to Sarah Doe's constitutional rights"; (3) "Plaintiffs' § 1983 claim against Mr. Aslin in his official capacity is redundant and should be dismissed as a matter of law"; (4) "Plaintiffs request for punitive damages against the District and Vice Principal Aslin in his official capacity under section 1983 claims should be dismissed as a matter of law"; (5) "NISD cannot be held liable under Title IX, because no person with supervisory power over Defendant

Nora Martinez had actual notice of sexual harassment; nor did any such supervisor respond to known acts of harassment with deliberate indifference"; and (6) "Plaintiffs' state-law tort claims against the District and Vice Principal Aslin should be dismissed as a matter of law, including any claims for punitive damages under this theory."

## Analysis

### A. State Law claims for assault, battery and improper relationship between educator and student

As indicated above, the Court construed Plaintiffs' complaint as only alleging these claims against Ms. Martinez. To the extent that these claims are lodged against them, the District and Mr. Aslin seek summary judgment. The District alleges that these tort claims are barred by the Texas Tort Claims Act. Mr. Aslin asserts that Plaintiffs have not alleged that he committed any assault, battery or improper relationship and accordingly Plaintiffs have not alleged any tort claims against him. Alternatively, he asserts that he is entitled to qualified immunity for any such claims.

Plaintiffs do not respond to Defendants' motion for summary judgment regarding these claims. The Court grants Defendants' motion on these claims because: (1) Plaintiffs have not alleged any such claims against these two defendants, and (2) the TTCA bars any such claims against the District.

### B. Request for punitive damages against NISD (and Aslin in his official capacity) pursuant to Section 1983

NISD argues that as a matter of law, punitive damages are unavailable against it for any violation of section 1983. Likewise, Mr. Aslin asserts that any request for punitive damages against him in his official capacity is barred. Plaintiffs apparently concede this issue and the Court agrees. *See Stern v. Hinds County, Miss.*, 436 Fed. Appx. 381 (5th Cir. 2011) ("Stern

cannot recover punitive damages from Hinds County under § 1983.  Although punitive damages can be assessed against an individual defendant sued in his individual capacity, Stern only sued Sheriff McMillin in his 'official and supervisory' capacities. An official-capacity claim 'is, in all respects other than name, to be treated as a suit against the [government] entity,' and Stern cannot recover punitive damages from Hinds County.").  This ruling does not affect any request for punitive damages under section 1983 against Mr. Aslin in his individual capacity.

### C.  Section 1983 claims against Aslin in his official capacity

Defendants argue Plaintiffs do not make clear whether they bring a § 1983 claim against Vice Principal David Aslin in his official or individual capacity, or both.  To the extent an official capacity claim is being asserted, the Defendants argue that the official capacity claim should be dismissed as redundant because of the section 1983 claim against the District.  The Court agrees.  Any "official capacity" claim under section 1983 against Mr. Aslin is dismissed as redundant.

### D.  NISD's argument that any Section 1983 claims against it should be dismissed

"Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible.  Thus, 'a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.'  However, a municipality may be held liable under § 1983 when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'  'Thus, § 1983 municipal liability may be imposed when (1) the enforcement of a municipal policy or custom was (2) 'the moving force' of the

violation of federally protected rights.'" *Doe on Behalf of Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 216-16 (5th Cir. 1998).

Texas law is clear that final policymaking authority in an independent school district, such as the NISD, rests with the district's board of trustees.  *See Doe*, 153 F.3d at 215.  In this case the NISD Board promulgated various policies that prohibit the conduct that Martinez engaged in.  Plaintiffs fail to argue or rebut the standards referenced above or argue that any exceptions are applicable.  Accordingly, the District's motion for summary judgment on this claim is granted.

### E.  NISD's argument that any Title IX claims against it should be dismissed

In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998), the Supreme Court set forth the standard under which a school district may be held liable for damages under Title IX for a teacher's sexual harassment of a student. The Court held that

> in cases like this one that do not involve official policy of the recipient entity, ... a damages remedy [against the school district] will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

524 U.S. at 290.  The Fifth Circuit has held that "[t]he deliberate indifference standard is a high one."  *Doe ex rel. Doe v. Dallas Independent School Dist*., 220 F.3d 380, 384 (5th Cir. 2000).  "Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, "even if the harm ultimately was not averted."  *Id.*

To defeat Defendants' motion for summary judgment, Plaintiffs must adduce evidence sufficient to create a genuine issue of material fact that some school officials (1) had authority to address the alleged abuse by Martinez and to institute corrective measures on NISD's behalf, (2) had actual notice of discrimination, and (3) acted with deliberate indifference.  *Id*. No party

contests that Mr. Aslin had authority to address Martinez's actions.   The District, however, argues that neither Mr. Aslin nor any other appropriate school official had actual notice that Martinez was abusing Sarah Doe.   The District also argues that it did not act with deliberate indifference.

**Actual Notice**

The District argues that it had no suspicion that Sarah Doe was being abused by Martinez until January 24, 2011, the date her parents arrived at the school with cell phone in hand.[16] Plaintiffs appear to argue that based upon all the acts that took place since 2006 (and recounted in detail above), the District knew that Martinez was a child predator.

This case is very tragic.   An educator abused her position, befriended a vulnerable child, deferred acting until she gained the child's trust, and then took advantage of her.   The law, however, only allows for recovery of damages from a school district if the school district had actual notice of the harassment and responded with deliberate indifference.   *See King v. Conroe Independent School Dist.*, 289 Fed. Appx. 1 (5th Cir. 2007).

The 2006 MySpace pages indicate that Ms. Martinez was communicating with a student and used inappropriate language.   Plaintiffs argue that the MySpace "conversations include Ms. Martinez profusely professing her love for a female student."   The copy provided to the Court is almost unintelligible and the names of the parties texting are completely unreadable.   The parent who brought the MySpace pages to the attention of the Principal complained only that she felt her student was being threatened by Ms. Martinez.   The parent raised no complaint that Ms. Martinez was communicating sexual messages to a student.

---

[16] Aslin Depo at pp. 123 ("I didn't see anything sexual, but I saw evidence that she was treating kids as if they were equal to her.   That was what I meant by the boundary issue and that was what I was addressing.").   See also p. 132. See also Depo of Grantley Boxill at p. 69; Depo of Jaime Liendo at pp. 29-30.

On November 10, 2010, it was known to school officials that Sarah Doe spent 15 to 20 minutes in Martinez's classroom, when she should have been in another class.  Again, in hindsight, and with the benefit of review, that was problematic.  But at the time, there was no indication that Ms. Martinez was inappropriately touching Sarah Doe.  Indeed, during this period of time, Ms. Martinez shared her classroom with another teacher.  The summary judgment evidence indicates that the other teacher arrived early to school, entered the classroom during the day at various times, and on occasions stayed late.  Given that Sarah Doe and Ms. Martinez took affirmative steps to avoid detection, this November incident did not provide any actual notice.

Plaintiffs argue that the numerous counselings regarding "boundary issues" raise a fact issue regarding actual notice.  The summary judgment evidence, however, indicates that Mr. Aslin and others questioned Ms. Martinez's lack of professionalism and "chumminess" with numerous students.  They sought to counsel Ms. Martinez on establishing the appropriate teacher-student hierarchical relationship and avoid any educational regulation privacy concerns associated with students having access to her desk where grades and other confidential information could be seen.  This was no "actual notice" that Sarah Doe was being assaulted by Martinez.

Plaintiffs also argue that the fact that Mr. Aslin decided to review videotapes and in fact reviewed certain tapes and sought the advice of others raises a fact issue regarding "actual notice."  The fact that video shows Ms. Martinez and Sarah Doe jointly engaging in a "hip bump" (bumped their hips against each other) in the hallway and a "chest bump" is again suggestive of inappropriate behavior between a teacher and a student, but that is not actual notice that Ms. Martinez is a child predator or actual notice that Martinez was assaulting Sarah Doe.[17]

---

[17] Plaintiffs argue that this behavior was "sexual harassment" as defined in the District's policies.  Some of the District's employees also opined that this behavior constituted "sexual harassment."  This, however, does not

The Court has reviewed the 9 .avi files submitted by Plaintiffs.[18]  With one exception, no objective person after reviewing the tapes could state that what is depicted gave actual notice to the District that Martinez is a child predator or actual notice that Martinez was assaulting Sarah Doe.  There is one scene in Exhibit 30, which is also presented as a still shot in Exhibit 31, which depicts Martinez giving Sarah Doe a hug in the hallway, but behind a wall or door.  No doubt that this hug appears improper, but it did not provide Aslin actual notice in December 2010 that Doe was being subjected to a sexual assault.

Plaintiffs also argue that Roger's counseling to Martinez not to text students raises a fact issue regarding actual notice.  Plaintiffs, however, present no summary judgment evidence of the contents of any text messages.

Plaintiffs argue that Mr. Aslin had seen videotapes displaying Ms. Martinez hugging 10 to 12 other students in hallways and other public areas.  Mr. Aslin opined that it was unprofessional conduct, but again that was no "actual notice" that Ms. Martinez was a child predator.

Plaintiffs argue that this Court's prior holding in *N.B. v. San Antonio Independent School Dist.*, 2007 WL 4205726 (W.D. Tex. 2007) mandates that "actual notice" exists in this case.  Plaintiffs' reliance on *N.B.* is misplaced.  In *N.B.*, a school librarian told the principal that she saw a school district police officer inappropriately touching a student's breast and grabbing the student's buttocks.  There were no such actual observations in this case.

---

address whether the District had actual notice that Sarah Doe was being assaulted by Martinez.  Although sexual abuse can be a form of sexual harassment, this scenario is different than the usual sex harassment case.  Traditionally, sex harassment is some form of unwelcome conduct.   In this case the conduct was consensual, but cannot be legally condoned because of the victim's age.  Based on the behavior in the video, Mr. Aslin would not have possessed "actual notice" of any abuse being directed to Sarah Doe.  Mr. Aslin, however, construed this behavior as inappropriate "chumminess", took remedial measures and counseled Martinez regarding same.
[18] See Exhibits 30 and 39 (CD discs).

Title IX liability cannot be based on principles of respondeat superior or constructive notice. *See Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274 (1998); *Alegria v. Texas*, 2007 WL 3256586 (S.D. Tex. 2007); *King v. Conroe Independent School Dist*., 2005 WL 1667803, *4+ (S.D. Tex. Jul 15, 2005).

Whether an official had actual notice is generally a question of fact. *Doe ex rel. Doe v. Dallas Independent School Dist*., 220 F.3d 380, 384 (5th Cir. 2000).  Actual notice, however, may be resolved as a matter of law where there is no genuine issue of material fact as to actual notice. *Id*. at 385.  The Court holds that as a matter of law NISD did not have actual notice given the summary judgment evidence submitted by both sides.

**Deliberate Indifference**

Assuming, arguendo, that the Court may have erred by holding that as a matter of law NISD did not have actual notice, the Court will address whether NISD acted with deliberate indifference.

"Whether an official's response to actual knowledge of discrimination amounted to deliberate indifference likewise may appropriately be determined on summary judgment." *Doe*, 220 F.3d at 387.  In *Doe*, a student actually reported to the school principal that he was improperly touched by his male teacher.  The teacher denied the accusation.  The Fifth Circuit noted that the principal interviewed the student, spoke with his mother, spoke with another teacher, spoke with teacher accused of fondling, and "warned him either that he would be 'dealt with' if the accusations were founded or that he should avoid acting in a way that could be misconstrued."  The Fifth Circuit continued noting that the principal "concluded, in error, that J.H.'s allegation was not true, and her erroneous conclusion had tragic consequences."  Nevertheless, the Court found no "deliberate indifference" concluding "we cannot say on the

facts before us that these actions, though ineffective in preventing McGrew from sexually abusing students, were an inadequate response to J.H.'s allegation." *Id*. at 388.  In this case there was no direct complaint made or brought to the District's attention, school officials were only aware of vague inappropriate acts done by Ms. Martinez, the school officials repeatedly warned her to act more professional and not to have students lingering at her desk.  The "deliberate indifference standard is a high one." *Id*. at 384.  "Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, 'even if the harm ultimately was not averted.'"  *Id*.  As a matter of law, the District did not act with deliberate indifference. *See also Howell v. Austin Indep. School Dist*., 323 Fed. Appx. 294 (5th Cir. 2009).

NISD's motion for summary judgment regarding the Title IX claim against it is granted.

### F.      Section 1983 claims against Aslin

Plaintiffs argue that Aslin violated § 1983 because he was the vice-principal of the school where Martinez worked and knew or was placed on notice of, but failed to stop, the sexual relationship between Martinez and Sarah Doe.

A supervisory school official can be held liable under § 1983 for an employee's sexual abuse of a student when:  "(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student." *King v. Conroe Independent School Dist*., 289 Fed. Appx. 1, **2 (5th Cir. 2007).

As stated above, Aslin did not learn of facts or a pattern of inappropriate sexual behavior by Martinez "pointing plainly toward the conclusion that the subordinate was sexually abusing"

Sarah Doe.  Additionally, as stated above, Aslin "did not demonstrate deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse."  Accordingly, summary judgment is proper on this claim.

In the alternative, Aslin's assertion of qualified immunity is applicable.  *See Doe on Behalf of Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity.").

## Defendants' Motion to Exclude Expert Testimony

Defendants seek to strike the testimony of Edward F. Dragan, Ed.D because his "opinions are speculative, unreliable, and will not assist the jury…."  For the reasons stated by the Court in *Garcia v. Navasota Independent School Dist*., 2011 WL 335253 (S.D. Tex. 2011), this Court concludes that Dr. Dragan's opinions are inadmissible and consists largely of conclusions as to the ultimate issues in this case with some citations to evidence reviewed.  The motion is granted. The Court reviewed Dr. Dragan's affidavit, which was included in Plaintiff's opposition to the motion for summary judgment, but excluded from consideration any conclusory statements.

## Plaintiffs' Motion for Sanctions

The Plaintiffs argue in this motion that the District failed to preserve certain evidence. Given the Court's ruling above, this motion may be moot.  Nevertheless, to the extent that this motion is still relevant to any claims that still may exist against Martinez, the Court will consider the motion.

Plaintiffs appear to argue that a litigation hold notice should have been instituted by the District on January 24, 2011, the date the District received Martinez's confession.  Plaintiffs

complain that they have received no videotapes of the school in question, other than segments of a December 17, 2010 video.  Plaintiffs also appear to argue that emails were not preserved and produced.  The District argues that it has produced all relevant documents.

Generally, the duty to preserve arises when a party has notice that the evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation.  The duty to preserve extends to documents or tangible things by or to individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 612-13 (S.D. Tex. 2010).

In this case Plaintiffs seek the sanction of an adverse inference instruction based on spoliation of evidence.  Alternatively, Plaintiffs seeks the forensic examination of the computers assigned to Aslin, Liendo, Munson, Martinez and the NISD police department.

"It is well established that a party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id*. at 615-16.

In this case, the duty to preserve documents was triggered no later than February 2, 2011, when Plaintiffs' counsel sent a letter to NISD officials (and received by NISD that same day) requesting that a variety of documents be preserved.  On February 3, 2011, the District's outside counsel sent a "litigation hold" letter to the key personnel in this case (the superintendent, deputy superintendent, the chief of police, employee relations administrator Boxill, Principal Glenda

Munson, and Vice Principal David Aslin).  The District personnel were advised to preserve all relevant information and the letter detailed other legal obligations.

This lawsuit was filed on May 24, 2011.  Prior to suit being filed Plaintiffs sent the District a request for certain information pursuant to the Texas Open Records Act.  On March 2, the District produced approximately 79 pages of documents and withheld production of other documents pending a Texas Attorney General Opinion as to exemptions that may be applicable.

On June 20, 2011, this Court issued an Order and Advisory requesting that the parties confer and submit a proposed scheduling order.  The Order also advised the parties of their obligation to meet and confer pursuant to Rule 26, encouraged the parties to use Fed. R. Civ. P. Form 52 during their "meet and confer" conference, and specifically discuss the discovery of electronically stored information.  Although the parties submitted an unopposed proposed scheduling order on July 28, it is unknown whether any "face to face" "meet and confer" conference took place or not.  Regrettably, it is apparent that the parties failed to adequately communicate what relevant information was being sought and discover what relevant information was in existence.

On December 21, 2011, Plaintiffs filed their first motion to compel. Plaintiffs complained that initially the District produced 9 .avi files (videos depicting interaction between Martinez and Sarah Doe).  After the November 8, 2011, deposition of Aslin was completed, the District then produced an additional video dated December 17, 2010.  Plaintiffs complained that the December 17, 2010 was edited in some fashion.  Plaintiffs sought an order that the District produce all such videos in an unedited state.  In addition, the Plaintiffs sought an order to ensure that all videos of Nora Martinez that NISD reviewed during any "investigation" of "Martinez violating school policies" have been produced.  Plaintiffs further complained that NISD police

officer Carlos Ramirez testified in his deposition that he obtained two statements of individuals after he became involved in Martinez's confession and arrest.[19]  Plaintiffs complained that the District had only produced one statement.  Plaintiffs further complained that Jamie Liendo testified that he had sent an email to Sandra Marks regarding Martinez and her allowing students behind her desk.[20]  Plaintiffs complained that email had not been produced.  Further, Plaintiffs complained that they had not received any emails either sent to Martinez or written by Martinez discussing "inappropriate behavior."  Finally, Plaintiffs complained that the District had not properly identified all individuals with knowledge of relevant facts in their initial disclosures.

The District responded to the motion to compel stating:  (1) the videos previously produced were not edited, but that any "skips" in the video appear because they are filmed in time intervals; (2) it had now produced all relevant videos; (3) only one statement had been taken by the NISD police department and it had been produced; (4) the email referenced by Liendo had been found and produced; (5) it had searched for any emails wherein it was anticipated that Martinez would have sent a response, but that none had been found.

The Plaintiffs' first motion to compel and for sanctions was referred to Magistrate Judge Mathy for disposition.  She concluded that the District had averred that all responsive documents had now been produced and that the only remaining issue was whether the District should be required to review and produce all past video footage of Martinez with *any* child was overly burdensome and potentially a violation of the FERPA.  She denied Plaintiffs' motion.

On January 18, 2012, Plaintiffs filed their objections to the Magistrate Judge's Order.  Plaintiffs objected stating that the Magistrate Judge's findings of overly broad and possible

---

[19] Officer Ramirez testified he remembered meeting and taking statements from two female students.  Ramirez at p. 73.
[20] This may or not be the same email, but Plaintiffs also complain that Liendo sent an email to Marks containing video clips that was not produced.

FERPA violations were not discovery objections asserted by the District.  Plaintiffs further argued that the video clips produced had been altered.  With regard to documents produced after depositions had been already taken, Plaintiffs again renewed their request for sanctions.

On February 22, this Court held a hearing on Plaintiffs' objections and to otherwise address discovery issues and the status of the case.  At the conclusion of the hearing the Court ordered the District to produce any materials in their possession that relate to any alleged inappropriate conduct or activity by Nora Martinez with any student from 2005 until her discharge from employment.  The Court also ordered that the District instruct its Information Technology Department to check any of its servers for any emails between the District's managerial agents or Human Resources Department and Martinez from November 2010 through January 24, 2011.  Finally, the Court ordered that the District search for any videos of Martinez and her adjacent classroom hallways between November 2010 and January 24, 2011.  Otherwise, the Court affirmed the Magistrate Judge's order.

On July 12, the Court held another status conference after it became aware of additional discovery disputes between the parties.  Upon the conclusion of that hearing the Court again denied Plaintiffs' objections to the Magistrate Judge's Order, but allowed Plaintiffs to re-depose Aslin or another NISD representative (with costs to be borne by the District) with regard to any documents produced after depositions had already been conducted by Plaintiffs' counsel.

With regard to the motion for sanctions that is currently pending, as noted above, Plaintiffs appear to argue that a litigation hold notice should have been instituted by the District on January 24, 2011, the date the District received Martinez's confession.

With regard to Plaintiffs' argument that a litigation hold notice should have been instituted by the District on January 24, 2011, no doubt that the District was aware that a

criminal prosecution would be initiated against Martinez on that date, but the District was not aware that Plaintiffs intended to file any civil litigation until February 2. Otherwise, Plaintiffs fail to specify how they were harmed by the failure to issue the litigation hold on the later date. Presumably, Plaintiffs are complaining that videotapes were over-written during some time period. No party, however, has provided the Court any competent evidence as to how long videotapes could be retrieved by the District before being over-written. Of greater importance is the fact that Plaintiffs fail to demonstrate how any such missing videotapes are relevant and how they are harmed by any missing videotape. In this case Plaintiffs were required to prove that the District and Aslin had actual notice of Martinez's assaultive acts. If neither the District nor Aslin ever reviewed any videotapes (other than the December 17, 2010 videos), the existence of any other videos may be discoverable, but are not dispositive to Plaintiffs' claims.

Plaintiffs also complain that certain emails were not preserved and produced. The District represents that it has made a diligent search and that there are no other responsive documents or emails. Understandably, given the offense committed against Sarah, and the District's past mistakes in locating and producing relevant documents, Sarah's parents and attorneys are wary that the District has fulfilled all of its discovery obligations. Plaintiffs, however, merely provide their subjective belief and conclusory statements that other emails must exist. This is insufficient to establish that sanctionable behavior has occurred.

In the event that Plaintiffs wish to continue prosecution of this lawsuit against Martinez, the District has represented that Martinez's computer was seized and retained as evidence by the NISD police department and that it is willing to make that computer available for a forensic examination at Plaintiffs' expense.

Plaintiffs' motion for sanctions (doc. no. 52) is denied.

19

## Conclusion

Defendants' motion for summary judgment (doc. no. 49) is granted.  Defendants' motion to exclude expert testimony (doc. no. 51) is granted.  Plaintiffs' motion for sanctions (doc. no. 52) is denied.  All claims against NISD and Aslin are dismissed.  The state tort claims and section 1983 claims against Martinez remain pending.  Defendant Martinez never filed an answer in this case and Plaintiffs have not sought a default judgment.  Plaintiffs are ordered to file an advisory within 14 days stating whether they intend to seek a default judgment or dismiss any claims against Martinez.

SIGNED this 6th day of August, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE